**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------- x

In re:                                                    :

                                  :          Case No.: 23-42143-ess

    **AVIGAIL EINHORN**                     :

                                    :          Chapter 13

                           Debtor.          :

---------------------------------------------------------------- x

       **PLEASE TAKE NOTICE** that, upon the annexed motion of Joseph Y. Balisok, Esq., attorney for Avigail Einhorn, ("Debtor"), a motion will be made before the Honorable Elizabeth S. Stong, held telephonically on November 19, 2024, at 10:30 am, for the entry of an order to approve loan modification agreement.

       <u>**Your rights may be affected**</u>. **You should read these papers carefully and discuss them with your attorney if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

       If you do not want the court to enter an Order granting any of the relief herein requested, or if you want the court to consider your views on the motion, then on or before November 12, 2024, at 10:30 am, you or your attorney must:

1. File with the court a written request for a hearing *or, if the court requires a written response*, an answer, explaining your position, at:

    United States Bankruptcy Court
    Eastern District of New York
    271-C Cadman Plaza East, Ste 1595
    Brooklyn, New York 11201

2. If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above; You must also send a copy to:

    Balisok & Kaufman, PLLC
    251 Troy Avenue
    Brooklyn, NY 11213

3. Attend the hearing scheduled to be held telephonically on November 19, 2024, at 10:30

am, by register appearance using eCourt Appearances and following the instructions; and

4.   Take any and all other steps required to oppose a motion under local rule or court order.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

All hearings before Judge Stong will be conducted by telephone, video or in person, as the Court deems appropriate. For remote hearings, whether telephonic or video, it is not necessary to contact the Courtroom Deputy to request prior authorization to appear remotely.

Whether the hearing is in person or remote, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and the party that you represent, if applicable. Please be sure to register at least two business days before your hearing. For remote hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called.

If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. **In the event that you are not able to register online**, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days prior to the hearing date.

Additional information about eCourt Appearances, including a tutorial on how to use the program, is available at https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances.

The Court appreciates the efforts of attorneys who are representing clients on a pro bono basis and invites them to contact chambers if they would like their matters to be called at the beginning of the calendar. Chambers will make every reasonable effort to accommodate such requests.

Procedures for obtaining hearing dates, and requesting emergency hearings, adjournments, telephonic or video appearances, conferences, and concerning chambers

copies, submission of orders, notices of presentment, and other matters may be found by clicking

the Judges' Procedures tab.

    <u>Mailing address:</u>

Hon. Elizabeth S. Stong
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

    *** Please review Judges' Procedures before contacting chambers.


Dated: Brooklyn, New York       <u>/s/ Joseph Y. Balisok         </u>
      October 28, 2024          Joseph Y. Balisok
                         BALISOK & KAUFMAN, PLLC
                         251 Troy Avenue
                         Brooklyn, NY 11213
                         Telephone: (718) 928-9607
                         Facsimile: (718) 534-9747
                         Email: joseph@lawbalisok.com

To:

Krista M. Preuss, Esq.
Office of the Chapter 13 Trustee
100 Jericho Quadrangle, Suite 127
Jericho, NY 11753

Office of The United States Trustee
Eastern District of New York - Brooklyn
Alexander Hamilton Custom House
One Bowling Green, Suite 510
New York, NY 10004-1408

U.S. Bank National Bank Association
C/O Rushmore Loan Management Svc
P.O. Box 55004
Irvine, CA 92619-2708

Nicole Greene, Senior Paralegal
Gross Polowy LLC
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
In re:                                                      :
                                                            :           Case No.: 23-42143-ess
    **AVIGAIL EINHORN**                  :
                                                            :           Chapter 13
             Debtor.         :
-------------------------------------------------------------- x

### AFFIRMATION IN SUPPORT OF MOTION FOR AN ORDER
### TO APPROVE LOAN MODIFICATION AGREEMENT

Joseph Y. Balisok, Esq., of Balisok and Kaufman PLLC, the undersigned, an attorney duly admitted to practice law before the Courts of the State of New York, and qualified to practice in the United States District Court, Eastern District of New York, affirms under the penalties of perjury:

1.      I am a member of the firm Balisok and Kaufman PLLC, attorneys for the Debtor herein and I am fully familiar with all the facts and circumstances of this matter. The Debtor, Avigail Einhorn, (the "Debtor"), respectfully moves this Court for an Order approving the terms of the Loan Modification Agreement reached between Nationstar Mortgage LLC ("Lender/Grantee"), and Debtor, which modifies the mortgage on the Debtor's primary residence and for such other and further relief as this Court may deem just and proper (the "Motion"). In support of the Motion, the Debtor respectfully represents as follows:

2.      This case was commenced on or about June 19, 2023, by the filing of a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. The first meeting of creditors was held and closed. Debtor has scheduled the ownership of real property located at 1144 38th Street, Brooklyn, NY 11218 (hereinafter, the "Real Property").

3.      Debtor and Nationstar Mortgage have engaged in negotiations over a loan modification agreement and have successfully reached an agreement to modify the terms of the mortgage on the Real Property.

4.      Debtor and Nationstar Mortgage now seek approval of the loan modification agreement which would modify the Note securing the first mortgage on the Real Property. Under the modification the Debtor's first mortgage is modified as follows:

| **Original Note Terms** | **Modification Terms** |
| --- | --- |
| Interest: 6.5% | Initial Interest Rate: 6.5% |
| with a monthly mortgage payment that | with a monthly mortgage of $3,067.77 |
| was $2,233.58 including escrows | which does not include escrows |
| **This was a fixed rate mortgage** | **This was a fixed rate modification** |
| | |
| Original principal balance $290,000.00 | New Principal Amount: $523,995.50 |

5.      After consideration of all her options the Debtor believes that proceeding with this loan modification is in the best interest of herself, her family, and the estate and the creditors and should be authorized by the Court.

## JURISDICTION

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

7.      The Debtor seeks the entry of an Order approving the settlement reached with SLS that will modify the terms of the mortgage on the Real Property.

8.      Debtor and Nationstar Mortgage have participated in the Loss Mitigation program established by this Court; Debtor asserts that the procedures established should apply as the Debtor and Nationstar Mortgage have reached a settlement in a Loss Mitigation program. Accordingly, this Court may approve any agreement reached during loss mitigation.

9.      All terms of the Loan Modification agreement have been disclosed to the Debtor

and Nationstar Mortgage as evidenced by Exhibit A annexed hereto. Nationstar Mortgage has

approved the terms of the settlement in the form of a written proposal.

10.     On October 28, 2024, the Debtor's counsel reached out to the Chapter 13 Trustee

and requested permission to enter into the above arrangement.

**WHEREFORE**, the Debtor respectfully requests the entry of an Order approving the

settlement agreement with Nationstar Mortgage that will modify the terms mortgage on Real

Property and for such other and further relief as the Court may deem just and proper.


Dated: Brooklyn, New York                    /s/ Joseph Y. Balisok
      October 28, 2024                          Joseph Y. Balisok
                                          BALISOK & KAUFMAN, PLLC
                                          251 Troy Avenue
                                          Brooklyn, NY 11213
                                          Telephone: (718) 928-9607
                                          Facsimile: (718) 534-9747
                                          Email: joseph@lawbalisok.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re:                                                  :
                                                        :          Case No.: 23-42143-ess
     **AVIGAIL EINHORN**                          :
                                                        :          Chapter 13
                       Debtor.          :
------------------------------------------------------------- x

## ORDER APPROVING LOAN MODIFICATION AGREEMENT

Upon the motion, by notice of motion dated October 28, 2024 (the "Motion"), for an order pursuant to Fed. R. Bankr. P. 9019, approving the entry into and performance by the above Debtor (the "Debtor") of a Loan Modification Agreement dated October 14, 2024, a copy of which is attached hereto as **Exhibit A** (the "Loan Modification"), modifying the loan referred to therein and related mortgage on the Debtor' residence; and there being due and sufficient notice of the Motion and the opportunity for a hearing thereon and there being no opposition to the requested relief; and no additional notice of or a hearing on the Motion being required under the circumstances; and it appearing that the Loan Modification is fair and reasonable and in the best interests of the Debtor and the estate, it is hereby

ORDERED, that the Motion is granted, the Loan Modification is approved, and the parties thereto are authorized to perform it according to its terms, subject to any bankruptcy discharge of the Debtor's personal obligations thereunder; and it is further

ORDERED, that any timely proof of claim filed in this case based on the Loan Modification is deemed modified and governed by the Loan Modification; and it is further

the Loan Modification, directly to the Servicer; and it is further

ORDERED, that the Loss Mitigation Program is closed.


Dated: Brooklyn, New York

_____, 2024



United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

In re:                                                  :

                                  :          Case No.: 23-42143-ess

     **AVIGAIL EINHORN**                        :

                                    :          Chapter 13

                     Debtor.          :

-------------------------------------------------------------- x

## <u>CERTIFICATE OF SERVICE</u>

STATE OF NEW YORK          )
                            )          ss: Brooklyn
COUNTY OF KINGS          )

     I, Joseph Y. Balisok, hereby declare, under penalty of perjury under the laws of the

United States of America, and pursuant to 28 U.S.C. § 1746, that on October 28, 2024, I caused

to be served a copy of the **NOTICE OF MOTION FOR AN ORDER TO APPROVE LOAN**

**MODIFICATION AGREEMENT, AFFIRMATION IN SUPPORT OF MOTION FOR AN**

**ORDER TO APPROVE LOAN MODIFICATION AGREEMENT, ORDER APPROVING**

**LOAN MODIFICATION AGREEMENT, and Exhibit A** by regular mail upon each of the

parties listed on the service list below by depositing true copies of same in sealed envelopes,

with postage pre-paid thereon, in an official depository of the United States Postal Service within

the Borough of Brooklyn, City and State of New York.

Dated: Brooklyn, New York          /s/ Joseph Y. Balisok
        October 28, 2024          Joseph Y. Balisok
                                   BALISOK & KAUFMAN, PLLC
                                   251 Troy Avenue
                                   Brooklyn, NY 11213
                                   Telephone: (718) 928-9607
                                   Facsimile: (718) 534-9747
                                   Email: joseph@lawbalisok.com

## **Service List:**

Krista M. Preuss, Esq.
Office of the Chapter 13 Trustee
100 Jericho Quadrangle, Suite 127
Jericho, NY 11753

Office of The United States Trustee
Eastern District of New York - Brooklyn
Alexander Hamilton Custom House
One Bowling Green, Suite 510
New York, NY 10004-1408

U.S. Bank National Bank Association
C/O Rushmore Loan Management Svc
P.O. Box 55004
Irvine, CA 92619-2708

Nicole Greene, Senior Paralegal
Gross Polowy LLC
1775 Wehrle Drive, Suite 100
Williamsville, NY 14221

# EXHIBIT A

**Loan Number** ████████

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF DECEMBER, 2024**, between **YECHOUDA EINHORN AND AVIGAIL EINHORN** ("Borrower"), and **NATIONSTAR MORTGAGE LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **JULY 01, 2002** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 1144 38TH STREET, BROOKLYN, NEW YORK 11218
#### (Property Address)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **DECEMBER 01, 2024**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$523,995.50**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.5000%** from **NOVEMBER 01, 2024**. Borrower promises to make monthly payments of principal and interest of U.S. **$3,067.77**, beginning on the **1ST DAY OF DECEMBER, 2024**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **6.5000%** will remain in effect until principal and interest are paid in full. If on **NOVEMBER 01, 2064**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. The terms in this paragraph shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01
(rev. 4/14)
91003002v24.4
Version 10_12_2024_01_00_54        (page 1 of 8)



**Loan Number** ▮▮▮▮▮▮▮

(a)    all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    If permitted by applicable law, all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower promises to pay the debt evidenced by the Note and Security Instrument. Further, Borrower acknowledges and agrees that any election by Lender to accelerate the debt evidenced by the Note and Security Instrument and the requirement by Lender of immediate payment in full thereunder is revoked upon the first payment made under the Agreement; and, the Note and Security Instrument, as amended by the Agreement, are returned to installment status and the obligations under the Note and Security Instrument remain fully effective as if no acceleration had occurred.

(f)    The Borrower further agrees to execute or cause to be executed by counsel, if applicable, a stipulation (to be filed with the court in the foreclosure action), that the Lender's election to accelerate the debt evidenced by the Note and Security Instrument and requirement of immediate payment in full thereunder is revoked upon the first payment made under the Agreement and the debt evidenced by the Note and Security Instrument is deaccelerated at that time pursuant to New York General Obligations Law § 17-105, or other applicable law.



**Loan Number** ▮▮▮▮▮▮▮

(g)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(h)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower's information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

☐ By checking this box, Borrower also consents to being contacted by text messaging.

(i)    Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179   1/01
(rev. 4/14)
91003002v24.4
Version 10_12_2024_01_00_54          (page 3 of 8)



**Loan Number** ████████

taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(j)   In any foreclosure action dismissed as a result of entering into this Agreement, Borrower will remain liable for and bear his or her own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

(k)   The mortgage insurance premiums on Borrower's Loan may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of the loan modification.

(l)   Any Borrower who co-signed the Security Instrument but did not execute the Note (a "Co-signer") and has not assumed the debt: (a) is co-signing this Agreement only to acknowledge the Agreement; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Security Instrument or the Note without the Co-signer's consent.

6.   If Borrower is a Debtor in an active bankruptcy proceeding, Court and/or Bankruptcy Trustee approval of this modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the modification is required, the modification agreement will not be effective unless evidence of the required approval is provided.

7.   Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for



**Loan Number** ███████

payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by



**Loan Number** ▮▮▮▮▮▮

RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)



**Loan Number** ████████

In Witness Whereof, the Borrower(s) have executed this agreement.

_____    Date: _10, 14, 2024_

Borrower -    **YECHOUDA EINHORN**

_____    Date: _10, 14, 2024_

Borrower -    **AVIGAIL EINHORN**

**LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT**    **Form 3179    1/01**
(rev. 4/14)
91003002v24.4
Version 10_12_2024_01_00_54                                                      *(page 7 of 8)*

**Loan Number**

In Witness Whereof, the Lender has accepted and executed this Agreement.

Lender

**NATIONSTAR MORTGAGE LLC**

By: _____

Printed Name:

**Fahmidha Sikdar**
**Vice President**

Title: _____

Date: _____ OCT 2 2 2024 _____



# DOCUMENT CORRECTION AGREEMENT
## ("Agreement")

Loan Number: ▮▮▮▮ (the "Loan")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION**:   In consideration of NATIONSTAR MORTGAGE LLC providing the loan modification (the "Workout") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in any of the enclosed documents, Borrower agrees as follows: If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Workout, upon request of NATIONSTAR MORTGAGE LLC, the Borrower will comply with any request to execute, acknowledge, and deliver to NATIONSTAR MORTGAGE LLC any documentation ("Replacement Documents") NATIONSTAR MORTGAGE LLC deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). The Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

**REQUEST BY NATIONSTAR MORTGAGE LLC**:   Any request under this Agreement made by NATIONSTAR MORTGAGE LLC, (including assignees and persons acting on behalf of NATIONSTAR MORTGAGE LLC), shall be _prima facie_ evidence of the necessity for the same. A written statement addressed to the Borrower, first class postage prepaid, at the mailing address indicated in our records shall be considered conclusive evidence of receipt by the Borrower of the request for Replacement Documents.

**BORROWER LIABILITY**: If the Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents to NATIONSTAR MORTGAGE LLC more than ten (10) days after being requested to do so by NATIONSTAR MORTGAGE LLC, the Borrower shall be liable for any and all loss or damage which NATIONSTAR MORTGAGE LLC reasonably sustains thereby, including, but not limited to, all reasonable attorneys' fees and costs incurred by NATIONSTAR MORTGAGE LLC. In addition, NATIONSTAR MORTGAGE LLC may elect to declare the Workout null and void in which case the loan shall be payable at the rate and on the terms as existed prior to the Workout. Any funds received by NATIONSTAR MORTGAGE LLC in conjunction with the Workout shall be retained by NATIONSTAR MORTGAGE LLC and applied to the loan as determined by NATIONSTAR MORTGAGE LLC in its discretion.

_____    Date: _10, 14, 2024_

**YECHOUDA EINHORN**

_____    Date: _10, 14, 2024_

**AVIGAIL EINHORN**

91004010v24.1          Version 10_12_2024_01_00_54
Page 1 of 1



**Loan Number** ▬▬▬▬▬

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), effective on **1ST DAY OF DECEMBER, 2024**, between **YECHOUDA EINHORN AND AVIGAIL EINHORN** ("Borrower"), and **NATIONSTAR MORTGAGE LLC** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **JULY 01, 2002** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 1144 38TH STREET, BROOKLYN, NEW YORK 11218
#### (Property Address)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **DECEMBER 01, 2024**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$523,995.50**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **6.5000%** from **NOVEMBER 01, 2024**. Borrower promises to make monthly payments of principal and interest of U.S. **$3,067.77**, beginning on the **1ST DAY OF DECEMBER, 2024**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **6.5000%** will remain in effect until principal and interest are paid in full. If on **NOVEMBER 01, 2064**, (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.  The terms in this paragraph shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:



**Loan Number 707950630**

(a)     all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)     all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)     All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)     All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)     If permitted by applicable law, all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)     Borrower promises to pay the debt evidenced by the Note and Security Instrument. Further, Borrower acknowledges and agrees that any election by Lender to accelerate the debt evidenced by the Note and Security Instrument and the requirement by Lender of immediate payment in full thereunder is revoked upon the first payment made under the Agreement; and, the Note and Security Instrument, as amended by the Agreement, are returned to installment status and the obligations under the Note and Security Instrument remain fully effective as if no acceleration had occurred.

(f)     The Borrower further agrees to execute or cause to be executed by counsel, if applicable, a stipulation (to be filed with the court in the foreclosure action), that the Lender's election to accelerate the debt evidenced by the Note and Security Instrument and requirement of immediate payment in full thereunder is revoked upon the first payment made under the Agreement and the debt evidenced by the Note and Security Instrument is deaccelerated at that time pursuant to New York General Obligations Law § 17-105, or other applicable law.



Loan Number [REDACTED]

(g)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(h)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower's information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

☐ By checking this box, Borrower also consents to being contacted by text messaging.

(i)    Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of



**Loan Number** <span style="background:black">     </span>

taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

(j)   In any foreclosure action dismissed as a result of entering into this Agreement, Borrower will remain liable for and bear his or her own attorney fees and costs incurred in connection with such action, if permitted by applicable law.

(k)   The mortgage insurance premiums on Borrower's Loan may increase and the date on which Borrower may request cancellation of mortgage insurance may change as a result of the loan modification.

(l)   Any Borrower who co-signed the Security Instrument but did not execute the Note (a "Co-signer") and has not assumed the debt: (a) is co-signing this Agreement only to acknowledge the Agreement; (b) is not personally obligated to pay the sums secured by the Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Security Instrument or the Note without the Co-signer's consent.

6.   If Borrower is a Debtor in an active bankruptcy proceeding, Court and/or Bankruptcy Trustee approval of this modification agreement may be required depending upon jurisdictional requirements. If Court and/or Bankruptcy Trustee approval of the modification is required, the modification agreement will not be effective unless evidence of the required approval is provided.

7.   Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for



payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall· pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by



**Loan Number** ███████

RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)



**Loan Number** ████████

In Witness Whereof, the Borrower(s) have executed this agreement.

_____     Date: 10, 14, 2024

Borrower -   **YECHOUDA EINHORN**

_____     Date: 10, 14, 2024

Borrower -   **AVIGAIL EINHORN**

**Loan Number** ▮▮▮▮▮▮▮

In Witness Whereof, the Lender has accepted and executed this Agreement.

Lender

**NATIONSTAR MORTGAGE LLC**

By: _____

Printed Name: **Fahmidha Sikdar**

**Vice President**

Title: _____

**OCT 2 2 2024**

Date: _____



# DOCUMENT CORRECTION AGREEMENT
## ("Agreement")

Loan Number: ▮▮▮▮▮ (the "Loan")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION**:    In consideration of NATIONSTAR MORTGAGE LLC providing the loan modification (the "Workout") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in any of the enclosed documents, Borrower agrees as follows: If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Workout, upon request of NATIONSTAR MORTGAGE LLC, the Borrower will comply with any request to execute, acknowledge, and deliver to NATIONSTAR MORTGAGE LLC any documentation ("Replacement Documents") NATIONSTAR MORTGAGE LLC deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). The Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by the Borrower of a written request for such replacement.

**REQUEST BY NATIONSTAR MORTGAGE LLC**:    Any request under this Agreement made by NATIONSTAR MORTGAGE LLC, (including assignees and persons acting on behalf of NATIONSTAR MORTGAGE LLC), shall be _prima facie_ evidence of the necessity for the same. A written statement addressed to the Borrower, first class postage prepaid, at the mailing address indicated in our records shall be considered conclusive evidence of receipt by the Borrower of the request for Replacement Documents.

**BORROWER LIABILITY:** If the Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents to NATIONSTAR MORTGAGE LLC more than ten (10) days after being requested to do so by NATIONSTAR MORTGAGE LLC, the Borrower shall be liable for any and all loss or damage which NATIONSTAR MORTGAGE LLC reasonably sustains thereby, including, but not limited to, all reasonable attorneys' fees and costs incurred by NATIONSTAR MORTGAGE LLC. In addition, NATIONSTAR MORTGAGE LLC may elect to declare the Workout null and void in which case the loan shall be payable at the rate and on the terms as existed prior to the Workout. Any funds received by NATIONSTAR MORTGAGE LLC in conjunction with the Workout shall be retained by NATIONSTAR MORTGAGE LLC and applied to the loan as determined by NATIONSTAR MORTGAGE LLC in its discretion.

_____         Date: 10 , 14 , 2024

**YECHOUDA EINHORN**

_____         Date: 10 , 14 , 2024

**AVIGAIL EINHORN**

91004010v24.1                    Version  10_12_2024_01_00_54
Page 1 of 1

